UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NATHANIEL A. SOMMER, </br></br>  Plaintiff, </br></br> v. </br></br> COMMISSIONER OF SOCIAL SECURITY, *sued as Andrew M. Saul, Commissioner of SSA*, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) CAUSE NO. 1:19-cv-00492-JVB-SLC </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## REPORT AND RECOMMENDATION

Plaintiff Nathaniel A. Sommer appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on March 16, 2020, by District Judge Joseph S. Van Bokkelen pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), Northern District of Indiana Local Rule 72-1(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 11).

Having reviewed the record and the parties' arguments, I RECOMMEND that the Commissioner's decision be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation is based on the following facts and principles of law.

### I. FACTUAL AND PROCEDURAL HISTORY

Sommer applied for SSI in March 2017 with a protective filing date of February 8, 2017 , alleging disability as of February 15, 2004. (ECF 7 Administrative Record ("AR") 37, 173,

158-65). Accordingly, per 20 C.F.R. § 416.325, February 8, 2017, is considered Sommer's filing date.

Sommer's application was denied on initial consideration and on reconsideration. (AR 86-95). A hearing was held on September 14, 2018, before administrative law judge ("ALJ") John Carlton, at which Sommer, who was represented by counsel; a witness; and a vocational expert testified. (AR 32-64). On November 7, 2018, the ALJ rendered an unfavorable decision to Sommer, concluding that he was not disabled because he could perform a significant number of unskilled, light-exertional jobs in the economy despite the limitations caused by his impairments. (AR 17-27). The Appeals Council denied Sommer's request for review (AR 1-5), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Sommer filed a complaint with this Court on November 21, 2019, seeking relief from the Commissioner's final decision. (ECF 1). In this appeal, Sommer argues that the ALJ: (1) erred in evaluating his mental impairments at steps two and three by ignoring an entire line of medical evidence; (2) failed to properly consider the medical opinion evidence; (3) failed to properly consider his symptom testimony; and (4) failed to properly formulate the residual functional capacity ("RFC") and posed a flawed hypothetical to the vocational expert at step five. (ECF 14 at 6).

At the time of the ALJ's decision, Sommer was twenty-six years old. (AR 158). He had obtained his graduate equivalency degree, but had no past relevant work experience. (AR 177-78). In filing his application for SSI, Sommer alleged disability due to a bipolar disorder, schizophrenia, and post-traumatic stress disorder. (*Id.*).

2

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's.  *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III.  ANALYSIS

### A.  *The Law*

Under the Act, a claimant is entitled to SSI if he establishes that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less

3

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[1] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On November 7, 2018, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 17-27). At step one of the five-step analysis, the ALJ found

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

4

that Sommer had not engaged in substantial gainful activity since his application date, February 8, 2017. (AR 19). At step two, the ALJ found that Sommer's asthma and schizophrenia were severe impairments. (*Id.*). At step three, the ALJ concluded that Sommer did not have an impairment or combination of impairments severe enough to meet or equal a listing. (*Id.*).

Before proceeding to step four, the ALJ determined that Sommer's allegations were not entirely consistent with the evidence. (AR 21). The ALJ then assigned him the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with nonexertional limitations. These limitations reflect that the claimant must work in an indoor temperature controlled environment with no exposure to excessive cold, heat, or humidity, fumes, gases, odors, pollen or other pulmonary irritants. The claimant is also limited to simple, routine work not done at a production rate pace . . . , and while he is able to interact with and react appropriately with coworkers and supervisors on an occasional basis, he is limited to no more than superficial interactions with the general public.

(AR 24). The ALJ found at step four that Sommer had no past relevant work. (AR 25). At step five, based on the RFC and the vocational expert's testimony, the ALJ concluded that Sommer could perform a significant number of unskilled, light-exertional jobs in the economy, including housekeeper/cleaner, production inspector, and production sorter. (AR 26). Accordingly, Sommer's application for SSI was denied. (AR 26-27).

### C. Steps Two and Three

Sommer first argues that the ALJ's step-two and step-three analyses of his mental impairments were critically flawed because the ALJ missed an entire line of evidence and failed to consider all of his mental impairments. (ECF 14 at 7-17). For the following reasons, Sommer's argument is persuasive.

At step two, the ALJ found that Sommer's schizophrenia was his only severe mental impairment, and at step three that his mental impairment did not meet or medically equal listing

5

12.03, schizophrenia and other psychotic disorders. (AR 19-20). Sommer observes, however, that in arriving at these step-two and step-three findings, the ALJ considered only his mental health records from Park Center dated March 2017 to June 2018, and failed to consider the more than 1,400 pages of mental health treatment records from the Indiana Department of Corrections ("DOC") dated from 2012 to February 2017 submitted by his attorney at the administrative hearing level of review. (ECF 14 at 11; *see* AR 89, 95, 218, 237-1635). Sommer contends that the ALJ's failure to consider the DOC records caused the ALJ to overlook his other mental diagnoses and to fail to appreciate the severity of his mental impairments. (*Id.*).

The Commissioner, in response, does not dispute that the ALJ failed to discuss the DOC records and "acknowledges that it would have been proper for the ALJ to address this evidence." (ECF 19 at 7). The Commissioner contends, however, that the ALJ's failure to do so was mere harmless error because Sommer was released from prison in February 2017, one month before he was eligible to receive SSI, and "the stresses of prison life likely exacerbated [his] condition."[2] (*Id.*). Accordingly, the Commissioner asserts that "the DOC evidence relates both to a time period when [Sommer] was not eligible to receive SSI benefits, and to a situation that was likely to make his condition worse as long as that situation continued," emphasizing that "there is evidence that [Sommer's] condition improved after being released from prison." (*Id.*).

As to the medical evidence, the Park Center records from March 2017 to June 2018 indicate a singular mental diagnosis of "Schizophrenia; Multiple episodes, currently in full remission." (AR 1645, 1650, 1666, 1670, 1710, 1714, 1723, 1728, 1733). The records generally

---

[2] The Commissioner's assertion that "the stresses of prison life likely exacerbated [Sommer's] condition" is an improper post hoc argument, as the ALJ never articulated this reasoning. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (stating that "the *Chenery* doctrine . . . forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced" (citation omitted)).

6

reflect that Sommer, who was accompanied by his mother to appointments, reported that he was "'doing good' with no depression, anxiety, hallucinations, delusions, or paranoia." (AR 1650; *see* AR 1666 ("'doing good' with no anger outbursts"), 1670 ("I am doing fine. The meds are working fine."), 1706 (same), 1718 ("Stated stable on current medications except for low motivation."), 1723 ("I feel better"), 1728 ("I am alright."), 1733 ("Doing alright.")). But the records also reflect that Sommer was receiving "continuous assistance" from his mother; that he was uncooperative at times, had poor grooming, a detached attitude, slow speech, a blunted affect, concrete thought with poverty of ideas, obsessive thought content, poor or fair judgment, and was distractible; and that he denied the need for mental health treatment. (*See, e.g.*, AR 1723-26, 1728-30, 1733-35). Sommer was living with his mother during this period, who reported that he often needed reminders to perform self-care tasks. (AR 184-91). The Park Center providers typically assessed Sommer as "[s]ymptomatic/stable" in their treatment notes. (AR 1668, 1672, 1708, 1712, 1720, 1735).

In contrast, the DOC records dated from 2012 to February 2017 include diagnoses of a borderline personality disorder, antisocial personality disorder, polysubstance dependence, bipolar disorder, and conduct disorder. (*See* AR 1474, 1489, 1492, 1496, 1499, 1521, 1525). The records reflect that Sommer was aggressive and impulsive at times; did not sleep for days; played in feces; had disorganized and incoherent speech, flight of ideas, grandiosity, delusions, and hallucinations; heard demonic voices encouraging him to kill others; demonstrated threatening and inappropriate behaviors; and was frequently under suicide watch, including at the time of his release in February 2017. (*See* AR 279, 401, 608, 637, 677, 705, 736, 752, 754-55, 808, 893, 947, 972, 1159, 1215, 1226, 1234, 1244, 1249, 1313, 1323, 1382, 1409, 1417,

7

1469, 1472, 1581, 1584, 1628). While the DOC records reflect that Sommer's symptoms did improve somewhat with medications, he had a history of medication noncompliance, and thus, was given involuntary injectable medications. (*Id.*).

Sommer does not really dispute that his mental illness symptoms further improved with treatment at Park Center in the months following his release from prison. (*See* ECF 14 at 23-24). But he emphasizes that "this improvement does not mean he was suited and able to be an employee who could remember and follow instructions, remain on task, and demonstrate socially appropriate behavior five days a week, eight hours a day," as his years of DOC records evidence the severity and fluctuating nature of his mental impairment. (*Id.*). Sommer argues that "[p]articularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates," and "[i]mprovement in this context does not equate with an ability to work." (*Id.* at 24 (citing *Scott v. Astrue*, 647 F.3d 734, 734, 740 (7th Cir. 2011); *Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015))).

The Seventh Circuit Court of Appeals has emphasized that "the ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019). Having said that, "[u]nder Title XVI (SSI), eligibility for benefits begins in the month during which the application is filed." *Browning v. Astrue*, No. 2:06 cv 4365, 2008 WL 835702, at *7 (N.D. Ind. Mar. 24, 2008) (citing 20 C.F.R. § 416.335)). "Medical evidence is relevant to [an SSI] claim only insofar as the evidence pertains to the claimant's current condition." *Hawkins v. Colvin*,

8

No. 3:13-CV-0053-CAN, 2014 WL 1766959, at *6 (N.D. Ind. May 1, 2014). "Thus the relevant time period for an ALJ to consider evidence commences at the beginning of the month in which [the] claimant filed for SSI disability benefits." *Id*. (emphasis omitted); *see Cauthen v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 738, 744 (N.D. Miss. Nov. 20, 2019) ("[The ALJ] properly focused his inquiry on the period between the application date and the ALJ's decision. It was incumbent on Plaintiff to produce evidence of disability during this period."); *Alston v. Colvin,* No. 14-cv-0244(JS), 2015 WL 5178158, at *9 (E.D.N.Y. Sept 3, 2015) ("[W]hether Plaintiff had PCP or wasting syndrome in 2009 is beside the point. Even if Plaintiff's condition met a listed impairment in 2009 and 2010, to qualify for benefits, Plaintiff must establish that he was disabled *after* he filed his application for benefits, which was on April 14, 2011."); *Payne v. Astrue*, No. 11-CV-0322 (RFT), 2013 WL 550677, at *3 (N.D.N.Y. Feb. 12, 2013) ("[F]or purposes of SSI, [the claimant] must establish disability [from] . . . her protective filing date . . . through . . . the date of the ALJ decision."); *Browning*, 2008 WL 835702, at *7 ("[E]ven if Browning can prove that she was disabled in 1997 or 1999 . . . she has not addressed the primary question on which SSI benefits hinge. Though a conclusion that in this earlier period Browning was disabled may have some probative value, it cannot replace the ALJ's primary obligation to address the question as of March 2001, when her application was filed.").

Here, Sommer applied for SSI on February 8, 2017 (AR 17, 19, 34, 173), and thus, most of the DOC records predate the relevant time period at issue (*see* AR 237-1635). But at a minimum, the DOC records from February 2017—the month in which Sommer applied for SSI—were indeed relevant to his SSI application. *See Hawkins*, 2014 WL 1766959, at *6. Therefore, the ALJ at least should have discussed the DOC records from February 2017.

9

Also, as stated above, "the ALJ must evaluate the record fairly." *Golembiewski*, 322 F.3d at 917. In this instance the ALJ referenced his consideration of Sommer's earlier medical records several times in his decision. As the ALJ stated: "Although [SSI] is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), *the undersigned has considered the complete medical history consistent with 20 CFR 416.912*." (AR 17 (emphasis added)). In turn, § 416.912(b)(1) instructs: "[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless . . . you say that your disability began less than 12 months before you filed your application." 20 C.F.R. § 416.912(b)(1). Here, the ALJ indicated in his decision that Sommer "by and through counsel amended [his alleged onset date of February 15, 2004,] to February 8, 2017 (testimony)." (AR 17). But Sommer disputes that assertion, observing that there is no evidence of record—testimony or otherwise—that he or his counsel actually agreed during or after the hearing to the ALJ's revision of his alleged onset date of February 15, 2004, to February 8, 2017. (*See* ECF 14 at 2 n.1; AR 34).

And there's more. The ALJ further stated: "Based *on the overall evidence including evidence established prior to* and after *August 2017* determination of daily activity reports and of testimony, it appears reasonable that the claimant experiences moderate limitations in all four assessed areas of functioning." (AR 23 (emphasis added)). Similarly, the ALJ stated: "[T]he undersigned affords great weight to [the] August 2017 determination of reviewing Agency psychologists, as Agency determination is reasonably consistent with and supported by evidence *established at [the] time of the determination*, with evidence established after that determination, with evidence on daily activity reports and with testimony . . . ." (AR 25 (emphasis added)).

10

But the state agency psychologists, Patricia G. Garcia, Ph.D., and J. Gange, Ph.D., who issued their reviewing opinions in May and August 2017, respectively, had only a few months of medical records from Park Center before them, as the DOC records were not yet in the record at the time of their review. (*See* AR 89 (indicating that "No report received" from New Castle Correction Facility), 95 (indicating that "No report received" from the New Castle Correctional Facility and the Indiana DOC), 218 (submitting the DOC records at the administrative hearing level)). In light of the ALJ's claim that his conclusion was consistent with the earlier medical evidence of record, the ALJ's omission of any discussion of the DOC records—which are arguably more supportive of Sommer's disability claim—is not a fair consideration of the record.

There is also another reason that the ALJ should not have wholly ignored the DOC records. As stated above, the ALJ afforded "great weight" to the reviewing opinions of Dr. Garcia and Dr. Gange dated May and August 2017, respectively, who concluded that Sommer could perform unskilled work. (AR 25, 72, 82). But these doctors observed when issuing their opinions that there was "[v]ery limited [medical evidence of record] in [the] file," noting only the diagnosis of "schizophrenia, stable" assigned by Park Center providers. (AR 69, 79). As stated above, Dr. Garcia and Dr. Gange had only a few months of Park Center's records before them because the DOC records were not in the record at the time of their review. (*See* AR 89, 95, 218). Given Sommer's lengthy history of mental illness, Dr. Garcia's and Dr. Gange's opinions could have been materially different had they reviewed the DOC records, which would have provided them with a longitudinal perspective of Sommer's various mental health symptoms and diagnoses. *See, e.g.*, *Williams v. Berryhill*, No. 17 C 4340, 2018 WL 4052173, at *4 (N.D. Ill. Aug. 24, 2018) (remanding case where the ALJ relied on the state agency doctors,

11

who reviewed an incomplete record, over the findings of the claimant's treating physician) (collecting cases).

As the Seventh Circuit has observed, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . ." *Hizer v. Berryhill*, No. 4:16-CV-00092, 2018 WL 4059821, at *5 (N.D. Ind. Aug. 24, 2018) (quoting *Scott*, 647 F.3d at 739-40); *see Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("Suppose that half the time [the claimant] is well enough that she could work, and half the time she is not. Then she could not hold down a full time job."). "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citations omitted). Therefore, "an ALJ must approach issues such as treatment and medication with caution when a claimant has a mental illness." *Brubaker v. Berryhill*, No. 1:17-cv-00010-SLC, 2018 WL 2214051, at *9 (N.D. Ind. May 14, 2018) (citation omitted) (remanding case despite that the claimant "admitted that she was able to cope with her illnesses and work in the past when she received regular treatment and complied with her medications"); *see Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general . . . may prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment." (citations omitted)).

To be clear, the undersigned Magistrate Judge is not saying that Sommer should necessarily be found disabled based on the DOC records. But the ALJ should have at least discussed the DOC records in relevant part, rather than turn a blind eye to them, and then resolved any conflicts between the DOC records and the Park Center records. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (noting that when the ALJ fails to

12

mention key evidence in his opinion, the court is left to wonder whether such evidence was even considered); *Lee v. Barnhart*, No. 01 C 2776, 2003 WL 260682, at *5 (N.D. Ill. Feb. 6, 2003) ("Where conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court." (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).  The Commissioner cannot now rely on post hoc arguments to resolve such conflicts in medical evidence.  *See Traver-Musselman v. Colvin*, No. 12-CV-423-WMC, 2014 WL 1007302, at *5 (W.D. Wis. Mar. 14, 2014) ("[T]he Commissioner's rebuttal is nothing more than a post hoc argument that reinforces the need for remand." (citations omitted)).

In sum, the undersigned Magistrate Judge concludes that the ALJ's failure to address the DOC records was more than mere harmless error, and thus, recommends that the case be remanded for further consideration of the DOC evidence and its impact on the ALJ's step-two and step-three analyses.[3]

### IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's final decision be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.  The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.

---

[3] Because a remand is warranted based on Sommer's argument challenging the ALJ's failure to consider the DOC records at steps two and three, the Court need not reach his remaining arguments.  Having said that, the ALJ's failure to fairly consider the DOC records could also have materially impacted the ALJ's weighing of the medical source opinions, his assessment of Sommer's symptom testimony, and his crafting of the RFC.  Thus, the ALJ is encouraged to revisit these findings upon remand.

Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

    Entered this 30th day of October 2020.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge